SPRIGHT *v*. STATE OF INDIANA.

[No. 968S142. Filed July 29, 1970. Rehearing denied December 17, 1970.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Curtis C. Plopper,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment with a violation of the 1935 Narcotic Act (as amended), said indictment reading in pertinent part as follows:

"The Grand Jury for the County of Marion in the State of Indiana, upon their oath do present that VAUGHN SPRIGHT on or about the 21st day of August, 1967, at and in the County of Marion and in the State of Indiana, did then and there unlawfully and feloniously have in his possession and under his control a narcotic drug, to wit: MARIJUANA, a derivative of Cannabis, and was not authorized by any law of the United States of America or the State of Indiana to have such narcotic drug in his possession or under his control, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On October 25, 1967, appellant waived arraignment and entered a plea of not guilty to the above mentioned charge. This cause was submitted to the court for trial on May 24, 1968. On June 4, 1968, the court found appellant guilty, ordered a pre-commitment investigation report to be filed, and set June 21, 1968, as the date for sentencing. On June 21, 1968, the court sentenced appellant to the Indiana State Reformatory for not less than two (2) nor more than ten (10) years. On June 10, 1968, prior to the date set for sentencing, appellant filed his motion for new trial which attacked the verdict as being contrary to law and not sustained by sufficient evidence. Said motion was overruled June 21, 1968. Appellant's sole Assignment of Error is: "1. That the Court erred in overruling appellant's motion for new trial."

From the evidence adduced at trial, viewed most favorably to appellee, it appears that on the morning of August 21, 1967, Ronald Drummond, a patrolman on the Indianapolis police force, was dispatched to the 3200 block of North Capitol Avenue upon the advice that a rape was supposed to have occurred there. When he arrived at the scene, he saw appellant in the company of at least four other individuals, three of whom were sitting in the car next to which appellant was standing. The complainant was also there, and Officer Drummond began to question her in the presence of appellant.

At this time Sergeant Richard Anderson arrived on the scene and immediately went to talk to the complainant's moth-

er who was standing across the street from where Officer Drummond was questioning the complainant. As he (Anderson) left the complainant's mother and approached the spot where Officer Drummond and appellant were standing, he saw appellant drop onto the curb what appeared to be an aluminum foil package. Anderson immediately placed appellant under arrest on a preliminary charge of rape. After he was advised of his rights, appellant was searched, and the only articles found on his person were his personal effects. Appellant was then placed in Officer Drummond's squad car, which was approximately 25 feet from where he (appellant) had previously been standing.

Anderson proceeded to examine the contents of the package which he had earlier seen appellant drop, and which he himself had picked up immediately prior to the time he placed appellant under arrest for rape, and, thereafter, placed appellant under arrest on a charge of pre-narcotics. Anderson then went back to where he found the first package and found three similar packages. He marked each package with blue ink from a ball point pen, handed them to Officer Drummond, and instructed him to turn each package into the police property room.

On August 22, 1967, appellant, after again being fully advised of his constitutional rights, was interrogated by Officer Crawley in the presence of Lt. Jones, Lt. Owen, and Sgt. Ward, all members of the Indianapolis Police Department. At this time appellant admitted having possession of the marijuana at the time of his arrest. He further stated that he had purchased it from a Mr. Wilson in the Barrington district of Indianapolis and had paid $17.50 for "half a can."

At the trial of this cause, Sergeant Anderson was shown four aluminum foil packages. He pointed out his identifying marks and stated that these were the same packages that he had found at the scene of appellant's arrest. These four packages were admitted into evidence as State's Exhibits 1 through 4. David Kirkoff, a police officer of the city of Indianapolis,

was qualified as an expert in the examination of dangerous drugs and narcotics, and he identified State's Exhibits 1-4 as being the same ones he examined on August 22, 1967. He then testified that each of the four packages did in fact contain a total of 4.7 grams of marijuana.

On appeal appellant raises three arguments to support his contention that his conviction below should be reversed. They are: (a) The judgment of the court is not sustained by sufficient evidence and is contrary to law for the reason that the packages containing the alleged marijuana were admitted into evidence without proper identification and without proper custodial identification; (b) an alleged confession of the defendant was permitted into evidence prior to the proof of the corpus delicti of the crime; (c) the names of four witnesses were endorsed on the indictment, said witnesses not being called by the State in support of its case, and the presumption is that they would have testified in favor of the defendant.

In support of this latter contention, appellant relies upon the language in 29 Am. Jur. 2d, § 180, to the effect that:

> "It is a well-settled rule that if a party knows of the existence of an available witness on a material issue and such witness is within his control, and if, *without satisfactory explanation*, he fails to call him, the jury may draw the inference that the testimony of the witness would not have been favorable to such party. Even in criminal cases, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption or inference that the testimony, if produced, would be unfavorable." (Our emphasis)

However, in the case at bar it would appear that the absence of the witnesses was satisfactorily explained to the court. The following colloquy between the trial court and Mr. David Millen, deputy prosecutor, substantiates this point:

> "*THE COURT:* Why don't you call Eleecia Droughn, Jeanette Malone, Francis Butler, Sergeant R. K. Anderson?

*MR. MILLEN:* They did not respond to their subpoenas, Your Honor. I'd like to have them called. Eleecia Droughn. Jeanette Malone. Francis Butler. Each of whom were subpoenaed, Your Honor."

Therefore, in cases where this precise situation is involved, we feel the rule to be applied is that there should be no adverse inference from non-production of a witness where it appears that the State has made all reasonable effort to procure his testimony. Thus, an unfavorable inference cannot be drawn against the State by reason of the absence of a witness who has been subpoenaed, but who, through no fault of the State, has failed to appear.

Appellant's argument that the trial court erred in admitting into evidence his alleged confession prior to the proof of the corpus delicti of the crime cannot now be considered by this Court. Appellant did not object to the testimony concerning the admission at the trial, did not allege said error in his motion for new trial, and now raises such argument for the first time on appeal. In *Fletcher* v. *State,* (1961), 241 Ind. 409, 172 N. E. 2d 853, this Court stated:

"Further, the record reveals that no objection was made prior to the objectionable testimony, and no motion to strike was made. Therefore, no error is reserved as to the admission of the testimony. *Beeler v. State* (1951), 230 Ind. 444, 104 N. E. 2d 744."

Likewise, in *Woods* v. *State* (1967), 248 Ind. 256, 226 N. E. 2d 326, this Court held that:

"In order to present upon an appeal the question of the introduction of incompetent evidence at the trial, the alleged error * * * must be presented to the trial court by motion for new trial. *Poehler v. State* (1924), 194 Ind. 207, 142 N. E. 140."

Therefore, since appellant failed to object during the course of the trial to the admission of the testimony relating to his

alleged confession, failed to move to strike said testimony, and failed to include in his motion for new trial or the attached memorandum the allegation that the trial court erred in admitting said evidence, this specification of error cannot now be considered by this Court.

Appellant further argues that the judgment of the court is not sustained by sufficient evidence and is contrary to law for the reason that the packages containing the alleged marijuana were admitted into evidence without proper identification and without proper custodial identification. We disagree. In support of his contention appellant seems to rely heavily on the fact that Sergeant Anderson, after finding the four aluminum foil packages, merely placed one or two ink marks on each for identification purposes, and that, therefore, there were no distinguishing marks to show that these packages were one and the same as those introduced into evidence as State's Exhibits 1 through 4.

Appellant cites no authority in support of this argument, and we believe there is none. A similar argument was presented to this Court in the case of *Dixon* v. *State* (1962), 243 Ind. 654, 189 N. E. 2d 715, wherein appears the following language:

> "We now proceed to consider appellant's first contention that the court erred in admitting the shotgun into evidence as an exhibit, without it first being properly identified. Appellant objected to the admission of the gun in evidence on the ground that it was not identified with the initials of the police officer, that it did not bear the date that it was received by him, and that the identifying mark could have been made by some other causation. Appellant's contention is without merit for several reasons * * * secondly, for the reason that, because of the very nature of the exhibit and the manner in which it was marked for authentication, there is a strong presumption that it was the identical gun taken from the appellant at the time of his arrest * * * (T)he admission of the exhibit into evidence was a matter within the discretion of the trial court, who obviously believed that the marking on the gun was sufficient to authenticate it. *Positive proof of authentication is not required.*

*Smith* v. *State* (1961), 241 Ind. 598, 172 N. E. 2d 673."
(Our emphasis)

The very nature of the aluminum foil packages found at the scene of appellant's arrest and introduced into evidence below is such that the affixing of distinguishable identifying ▪ marks would indeed be difficult. Therefore, under the circumstances, it would seem that Sergeant Anderson did all that was humanly possible to preserve the identity of these packages for his later in-court identification. When confronted with the four packages during the course of the trial, he positively identified them as the same packages he found at the scene of appellant's arrest; he also specifically pointed out to appellant's counsel the marks that he had made on each, all of which were clearly visible. For these reasons we feel State's Exhibits 1 through 4 were properly admitted into evidence, and that the trial court did not abuse its discretion in this regard.

Appellant's contention that the judgment is contrary to law for the reason that the packages containing the alleged marijuana were admitted into evidence without proper custodial identification must also fail. With respect to the "chain of custody" method of identification of an exhibit, this Court recently stated, in the case of *Graham* v. *State* (1970), 253 Ind. 525, 255 N. E. 2d 652, that:

> "The chain of evidence method of identification is a widely recognized concept in both criminal and civil law. In most cases it is not possible to establish the identity of an exhibit in question by a single witness. The exhibit has usually passed through several hands before being analyzed or examined or before being produced in court * * *.
>
> (I)t is necessary to establish a complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian. If one link of the chain is *entirely* missing, the exhibit cannot be introduced or made the basis for the testimony or the report of an expert or officer. If the testimony of the State's expert witnesses * * * is sought to be offered at trial, then the State should be prepared to establish a 'chain of evidence' by either producing police

custody records showing the same or by testimony of witnesses * * *.

> Unless the State can show by producing records or testimony, the continuous whereabouts of the exhibit at least between the time it came into their possession until ■ it was laboratory tested to determine its composition, testimony of the State as to the laboratory's findings is inadmissible." (Our emphasis)

We feel the State has met its burden in this regard. Sergeant Anderson testified that after he found the four aluminum foil packages at the scene of appellant's arrest and marked ■ them for identification he gave them to Officer Drummond and instructed him to turn them into the police property room. Officer Drummond testified that he personally took the packages to the police property room on August 21, 1967, as instructed. Officer Kirkoff testified that on August 22, 1967, he went to the police property room and was given the packages so that he might analyze the contents thereof. He stated that the property room records showed that the material was turned into the property room at 9:15 a.m. on August 21, 1967, the day of appellant's arrest, by Officer Drummond. The State has shown, by the testimony of these witnesses, the continuous whereabouts of State's Exhibits 1 through 4 from the time they came into the possession of Sergeant Anderson until they were laboratory tested by Officer Kirkoff. Therefore, the exhibits themselves and the testimony given by Officer Kirkoff with respect to the contents of said packages were properly admitted into evidence.

Appellant's contention that the judgment below is not sustained by sufficient evidence and, therefore, contrary to law must also fail. When the question of sufficiency of ■ the evidence is raised, this Court has oftentimes stated that it will consider only that evidence most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. *Gaddis* v. *State* (1969), 253 Ind. 73, 251 N. E. 2d 658; *Fisher* v. *State* (1966), 247 Ind. 529, 219 N. E. 2d 818.

The general rule is that a conviction will be sustained if there is substantial evidence of probative value to prove each material allegation of the affidavit or indictment. While "substantial evidence" means more than "seeming or imaginary" a verdict upon which reasonable men may differ will not be set aside. *Finch* v. *State* (1967), 249 Ind. 122, 231 N. E. 2d 45.

Appellant alleges that there is no evidence that he was in actual possession or control of the packages seized by Sergeant Anderson. He advances the argument that the State's entire case rests on an inference upon an inference, drawn from circumstantial evidence, and that the circumstances themselves are not corroborated or proven by testimonial facts or documentary evidence. He places particular emphasis on the fact that Officer Drummond testified that the four packages were found next to the police car in which appellant was sitting after he had been placed under arrest, while Sergeant Anderson testified that the packages were found at the spot where appellant was standing prior to being removed to the squad car, approximately 25 feet away. The evidence is somewhat conflicting with respect to this fact; however, this Court has held on numerous occasions that, on appeal, it will not weigh the evidence nor determine the credibility of the witness. *Gaddis* v. *State, supra; Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809.

Appellant's claim that he did not have actual possession and control over the four aluminum foil packages containing marijuana is untenable when viewed in light of the circumstances surrounding his arrest and certain statements that he made on the day following. Sergeant Anderson stated without reservation that he saw appellant drop one of the packages prior to his arrest. The mere fact that appellant was attempting to divest himself of possession of the package could not mean that he had in fact done so, so as to relieve himself of all responsibility therefor. On the day following his arrest, appellant admitted having possession

of the marijuana at the time of his arrest. The evidence with respect to this element of the crime is sufficient to sustain the finding and judgment of the court.

The judgment of the Marion County Criminal Court, Division Two, is affirmed.

Hunter, C.J., Arterburn, DeBruler and Givan, JJ., concur.

Note.—Reported in 260 N. E. 2d 770.