**Hyland KYLES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3-878A205.

Court of Appeals of Indiana, Third District.

June 27, 1979.

George Glendening, Hammond, for appellant.

Theodore L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

A jury found Hyland Kyles guilty of committing a burglary in a dwelling which is a Class B felony.[1] He was sentenced to a minimum security facility for a period of six years; all but two years were suspended.

On appeal, Kyles raises three issues for our review:

(1) he was denied due process of law as the result of the defective sentencing procedure utilized by the trial court;

(2) the court erred in admitting into evidence, over proper objection, a pry bar used in the burglary; and

(3) the verdict of the jury is contrary to law because it is unsupported by sufficient evidence.

We affirm.

The facts are as follows: Ada Santillan left her home a little before 8 p. m. one evening. She returned home around 8:30 p. m. to find approximately $1,700 of stereo equipment and records had been stolen from the premises in her absence.

Louis Taleff visited the Santillan residence shortly after 8 p. m. that same evening. When he approached the house, he noticed a black and gold automobile parked in front of it. As he pulled up behind the car, Taleff was able to obtain a good look at the car's license plate. He then drove around the block and returned to find the car still there. This time, as Taleff approached the Santillan house, the black and gold car drove away. Taleff went to a nearby telephone to report this suspicious activity to Ada Santillan, who promptly called the police. He returned to the house and again saw the same black and gold automobile parked in front of it. As this car left for the second time Taleff was able to clearly see the car's occupants.

Because of Taleff's description, the police were able to take the car and its two occupants into custody within twenty minutes. The stolen merchandise was found in the car. Kyles was driving the car.

The first issue raised for our consideration is whether Kyles was denied due process of law as the result of the sentencing procedure utilized by the trial court. In his brief, Kyles argues that the court considered information outside the record in the determination of the sentence. There was no showing that the court abused its statutorily given discretion in the determination of the sentence. It followed the dictates of IC 1971, 35–4.1–4–3 (Burns Code Ed., 1979 Repl. Vol.) when it provided for a sentencing hearing.[2]

1. IC 1971, 35–43–2–1 (Burns Code Ed., 1979 Repl. Vol.) defines Burglary:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

2. "Before sentencing a person for a felony the court must conduct a hearing to consider the facts and circumstances relevant to sentencing. The person is entitled to subpoena and call witnesses and otherwise to present information in his own behalf. The court shall make a record of the hearing, including:

"(1) A transcript of the hearing;

"(2) A copy of the presentence report; and

"(3) If the court finds aggravating or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes."

Since January 1, 1978, this Court has been guided by the Indiana Rules for the Appellate Review of Sentences. Rule 2 defines the scope of review allowed this court:

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

"(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

■ The conviction of Burglary from a dwelling is a Class B felony. IC 1971, 35–50–2–5 (Burns Code Ed., 1979 Repl. Vol.) requires:

"A person who commits a class B felony shall be imprisoned for a fixed term of [10] years, with not more than ten [10] years added for aggravating circumstances or not more than four [4] years subtracted for mitigating circumstances;
. . . "

IC 1971, 35–4.1–4–7 (Burns Code Ed., 1979 Repl. Vol.) provides that:

"(a) In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

"(b) The court may consider these factors as mitigating circumstances or as favoring suspending the sentence and imposing probation: . . . "

Kyles' sentence was six years, the minimum amount allowed by statute for this crime. The court considered a variety of circumstances which led to its suspension of four of the six years of Kyles' sentence. After noting Kyles' paraplegic condition, his limited capacity to commit other crimes, and the likelihood that he would respond affirmatively to short-term imprisonment and probation, the court sentenced him to a minimum security facility for two years.

■ As long as the sentence imposed by the trial court is not manifestly unreasonable, this Court will not impose a different sentence than that allowed by statute. Indiana Rules for the Appellate Review of Sentences, Rule 2. *See also, Hall v. State* (1978), Ind., 371 N.E.2d 700.

The penalty imposed in this case is clearly within statutory limits. We find no error.

■ The second error raised on appeal is whether a proper chain of custody was established at trial for the admission into evidence of a pry bar used in the burglary.

After Kyles' car was stopped by police and its occupants taken into custody, Officer Jerry Solomon searched the car. He found a pry bar in the front seat. He confiscated the bar as evidence and immediately scratched his initials "J.S." and the case number on it with his knife. He then put the pry bar in an envelope and took it to the Bureau of Identification at the Gary Police Department. The envelope was given to the officer in charge of the vault until the trial date, at which point it was taken to the court.

*Johnson v. State* (1977), Ind., 370 N.E.2d 892, disposes of Kyles' chain of custody argument. There the confiscated evidence consisted of a knife and three one-dollar bills. The knife was taken from the front seat of the victim's car by a police officer who marked it by scratching his initials and the date on the knife's handle. The dollar bills, taken from the defendant's pocket, were similarly marked. The officer turned all of these items into the police department property room and received them back on the day of trial. The court in *Johnson* decided that no chain of custody need be shown when the evidence is readily identifiable by human perception. It said:

"The establishment of a chain of custody is necessary where the nature of the evidence is such that it lacks identifiable characteristics or where the evidentiary purpose to be served by the item requires

assurance that the evidence has not been subjected to tampering which could not be detected by human perception. Where the evidence is such that it may be recognized and identified by witnesses, and where tampering or alteration relevant to the purpose to be served by the evidence is not a realistic threat, no chain of custody need be established." (Citations omitted).

370 N.E.2d 892, 894.

Such was the case here. The pry bar, with the initials "J.S." and case number, was readily identifiable. As such, it needed no showing of chain of custody. Officer Solomon's testimony that he recognized the pry bar marked in this fashion provided the necessary identification. We find no error in admitting the evidence.

■ The third question presented on appeal is whether the evidence is sufficient to support the verdict of the trial court.

The facts of record most favorable to the State establish that Kyles was the driver of the car. Because of his paraplegic condition he remained in the car throughout the burglary. He purposely parked his car so that he could observe his companion break and enter the Santillan's front door. Later, his companion made two trips from the house to the car with his arms loaded with stereo equipment, records, and a woman's coat. These articles were placed in the back seat of Kyles' car before he and his companion drove away from the Santillan residence.

Several minutes later, Kyles and his companion returned to the Santillan residence. Again, Kyles parked his car while his companion entered the Santillan front door for a third time and returned to the car with more stereo equipment.

■ When the question of the sufficiency of the evidence to support a finding of guilty is presented to this Court, we will consider only that evidence most favorable to the State and all the reasonable inferences to be drawn therefrom. *Finch v. State* (1978), Ind.App., 379 N.E.2d 990. This Court will neither weigh the evidence nor resolve any questions concerning the credibility of the witnesses. *Sleck v. State* (1977), Ind.App., 369 N.E.2d 963. A conviction will not be reversed unless we find that reasonable persons are unable to form inferences as to each material element so as to find the defendant guilty beyond a reasonable doubt. *Conard v. State* (1977), Ind. App., 369 N.E.2d 1090.

Kyles does not dispute his presence at the burglary, nor does he deny his role in driving the car. He asserts, on appeal, that he lacked knowledge as to his companion's commission of the burglary.[3]

He claims that his role as driver of the car was similar to the defendant's in *Conard, supra.* There the defendant Conard was the driver of the "getaway car" in a grocery store robbery. While there was no evidence that Conard was a principal in the robbery, he was charged as such since an accessory may be charged and tried as a principal. *Conard, supra.* In reversing the conviction, the court was unable to find Conard knowingly aided in the robbery. It stated:

"Conard was not in a position to observe the in-store actions of the robbers, and their casual stroll out of the grocery carrying a sack of groceries gave no indication of the robbery just completed. The two robbers entered the car, and Conard drove away unhurriedly. His presence at the scene is not sufficient to convict. His act of driving the 'getaway' car . . . is not sufficient to support a reasonable inference that he had knowledge of, and participated in, the commission of the robbery. . . ."

369 N.E.2d 1090, 1093.

Kyles, however, was in a position to see the actions of his companion during the

3. IC 1971, 35–41–2–4 (Burns Code Ed., 1979 Repl. Vol.):

"A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

"(1) Has not been prosecuted for the offense;
"(2) Has not been convicted of the offense; or
"(3) Has been acquitted of the offense."

burglary. He drove the car and patiently waited while his companion made three separate trips into the Santillan residence, each time bringing stereo equipment back to the car.

We find sufficient evidence to support a reasonable inference that Kyles had knowledge of and participated in the commission of the burglary.

We find no merit to the arguments made on appeal. We affirm the trial court's judgment and sentence.

GARRARD, P. J., and HOFFMAN, J., concur.